# EXHIBIT C

# In the Matter Of:

## DEBORA WALTON

-v-

## FIRST MERCHANTS BANK

---

### Christopher Horton

### March 14, 2018

---

# StewartRichardson
## DEPOSITION SERVICES

800.869.0873 | www.StewartRichardson.com

*Reporting Driven by Excellence — Since 1975*

| INDIANAPOLIS | EVANSVILLE | FORT WAYNE | VALPARAISO |
|---|---|---|---|
| 317.237.3773 | 812.477.4449 | 260.444.4864 | 219.462.3436 |

```
                  UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF INDIANA
                      INDIANAPOLIS DIVISION
```

DEBORA WALTON,                   )
                                 )
            Plaintiff,           )
                                 )
        -v-                      ) CAUSE NO.
                                 ) 1:17-CV-1888 JMS MPB
FIRST MERCHANTS BANK,            )
                                 )
            Defendant.           )

The deposition upon oral examination of CHRISTOPHER HORTON, a witness produced and sworn before me, Sally B. Cekander, RMR, Notary Public in and for the County of Marion, State of Indiana, taken on behalf of the Plaintiff at the offices of Stewart Richardson & Associates, One Indiana Square, Suite 2425, Indianapolis, Indiana, on March 14, 2018, at 10:25 a.m., pursuant to the Federal Rules of Civil Procedure.

```
              STEWART RICHARDSON & ASSOCIATES
               Registered Professional Reporters
                     One Indiana Square
                         Suite 2425
                  Indianapolis, IN  46204
                       (317)237-3773
```

1  A  As far as specific to this document, I would
2     suggest, no. But it does, I believe, in the
3     document refer you back to any account agreements
4     that you may have a copy of, you know. And, again,
5     this is specific to the deposit account, so I would
6     think it would go to your account agreement.
7  Q  Okay. Why don't you turn to page seven, please?
8  A  Correct.
9  Q  I need you to read No. 33.
10 A  [Reading] (33) Monitoring and recording telephone
11    calls and consent to receive communications. We
12    may monitor or record phone calls for security
13    reasons, to maintain a record, and to ensure that
14    you receive courteous and efficient service. You
15    can consent in advance to any such recording. We
16    do not need to remind you of our recording before
17    each phone conversation.
18        To provide you with the best possible service
19    in our ongoing business relationship for your
20    account, we may need to contact you about your
21    account from time to time by telephone, text
22    messaging, or email. However, we must first obtain
23    your consent to contact you about your account
24    because we must comply with the Consumer Protection
25    Provisions of the Federal Telephone Consumer

1  Protection Act of 1991.  And then it's captioned
2  (TCPA) CAN-SAPM Act and their related federal
3  regulations and order issued by the Federal
4  Communications Commission.
5       Your consent -- there is a bullet point.  Your
6  consent is limited to this account and is
7  authorized by applicable law.  Your consent does
8  not need -- excuse me -- your consent does not
9  authorize us to contact you for telemarketing
10 purposes (unless you otherwise agree elsewhere).
11      With the above understanding, you authorize us
12 to contact you regarding this account throughout
13 its existence using any telephone numbers or email
14 addresses that you have previously provided to us
15 or that you may subsequently provide to us.
16      This consent is regardless of whether the
17 number we use to contact you is assigned to a
18 landline, a paging service, a cellular wireless
19 service, a specialized mobile radio service, other
20 radio common carrier service, or any other service
21 for which you may be charged for the call.  You
22 further authorize us to contact you through the use
23 of voice, voice mail, and text messaging, including
24 the use of prerecorded or artificial voice messages
25 and an automated dialing service.

```
 1          If necessary, you may change or remove any of
 2     the telephone numbers or email addresses at any
 3     time using any reasonable means to notify us.
 4  Q  Okay.
 5  A  So that was my mistake for oversight.
 6  Q  That's okay.  Back at the top where it says,
 7     "However, you must first obtain your consent to
 8     contact you about the account because we must
 9     comply with the Consumer Protection Provisions and
10     Federal Telephone Communication," so what I'm
11     looking for is is there anything in this document
12     Walton authorized you all's consent to do that?
13          MR. RODGER:  Objection.  This is the same
14     issue.
15  Q  Anything in the document that you see a signature
16     or any documents that you've seen today that gives
17     a signature that your bank consents -- that Walton
18     consents for your bank to contact her?
19  A  I think I would have to -- honestly and truthfully,
20     I think I would have to have a legal interpretation
21     of --
22  Q  That's not my question.
23  A  I'm being honest.  I mean, there is language --
24  Q  That's not my question.  My question is, is there
25     anything in the documents that you have reviewed
```

1  today that shows that Walton gave consent for you
2  all to contact her on her home or cell phone?  In
3  any of the documents that you reviewed today --
4  that's all I'm asking, is that question.  I've
5  already interpreted, and I know what the TCPA Act
6  calls for.  It calls for a consent in advance with
7  a signature.  So the documents that we've looked at
8  today, do you see anything in those documents that
9  gave First Merchants Bank the right to contact
10 Walton?
11       MR. RODGER:  Objection.  This is the same
12 objection.  You're asking him whether or not the
13 documents give him a right.  So you're asking him
14 to interpret the document.
15       MS. WALTON:  I'm not asking him to interpret
16 this document.  Forget this document.
17 Q  Are there any other documents --
18       MR. RODGER:  It's the same objection to any
19 document.  He's not going to testify to the
20 explicit rights contained therein.  He's willing to
21 identify the portions of the document that address
22 the issue and read them.
23 Q  My question is, are there any documents that you
24 have reviewed today that show Walton consented to
25 you all to contact her on her home, cell, or office

```
 1    phone?
 2          MR. RODGER:  Objection.  It's the same
 3    question.
 4          MS. WALTON:  Okay.
 5  Q Either yes or no.  Are you going to answer the
 6    question or not?
 7          MR. RODGER:  He's not going to answer to what
 8    the document stands for.
 9          MS. WALTON:  I'm not asking about -- okay.
10    Put this document aside.  Let's go back to these
11    documents again.  Do you want to do that?  I'm
12    asking any document that was signed.  That's what
13    I'm asking.  You're stuck on this document.
14          MR. RODGER:  No, I'm not.
15  Q I'm done with this document.  My question is, are
16    there any documents that you've seen today at this
17    deposition that Walton signed giving you consent?
18          MR. RODGER:  And we object to that question to
19    the extent that you're asking him to say what the
20    document stands for from a legal position.
21          MS. WALTON:  I'm not asking what it stands
22    for.  I'm asking has he seen any documents today
23    that gave their bank the right to contact Walton.
24          MR. RODGER:  I don't think we're going to get
25    anywhere.  I'm going to say the same thing.  You're
```

```
 1    going to say the same thing.  He's not going to
 2    answer the question to the extent of what the
 3    document says.
 4         MS. WALTON:  I'm not asking him what the
 5    document says.  Okay.  Let's get rid of that
 6    document.
 7         MR. RODGER:  I'm talking about any document
 8    that's been produced or shown to him today.  He can
 9    testify to the literal language.  He can talk about
10    portions of it, like he just did here, that refer
11    to consent.  But he's not going to be able to tell
12    you whether or not that's a valid consent because
13    that's a legal question.
14  Q  Let me rephrase my question.  Have you seen any
15    documents today with Walton's signature on it that
16    consents to First Merchants calling her?  Yes or
17    no?
18         MR. RODGER:  Objection.
19  Q  Answer the question, please.
20         MR. RODGER:  No.  It's the same objection.
21    You're asking him to --
22         MS. WALTON:  Let's get the judge on the phone
23    because my question is very specific.
24  Q  Have you seen any documents today with Walton's
25    signature on it that consent your bank to call her?
```

1   There's a yes or a no. Either you have or we'll go
2   through all the documents again. It's real simple.
3   Have you seen any documents that your bank produced
4   to Walton to sign consenting your bank to call; I
5   need a signature.
6          MR. RODGER: Let's take a quick break so I can
7   talk with my client, please.
8          (A brief recess was taken.)
9   BY MS. WALTON:
10  Q  Back on the record. Okay. All right. My question
11     is, did you see any documents produced today that
12     have Walton's signature on it consenting that
13     First Merchants Bank can contact her according to
14     the Telephone Communications Practicing Act?
15  A  There are multiple documents that have been
16     presented today with your signature on them that
17     are basically incorporated into the account
18     agreements that for reasons today -- I mean, it
19     asks me to formulate a legal opinion of whether or
20     not --
21  Q  I'm not asking a legal opinion. I'm not asking
22     what your counsel told you to say outside, which
23     I'm going to address that with the court. This is
24     the fourth time you've taken somebody out to talk
25     to them. And I've had depositions on depositions

Case 1:17-cv-01888-SEB-MPB   Document 64-3   Filed 05/21/18   Page 11 of 11 PageID #: 475

Page 95

```
 1      and that's never happened.  But that's okay.  Just
 2      say you're not going to answer the questions.
 3             MR. RODGER:  No, he did not say he's not going
 4      to answer the question.
 5   Q  Okay.  Well, then don't give me an answer that your
 6      attorney told you.  Because you said the word legal
 7      whatever.  Unless you went to law school and you
 8      know, you don't know.  So my question today, any
 9      documents that you've seen consenting that under
10      the Telephone Communications Act that is in the
11      document that you're looking at now Walton signed
12      to consent.  It's simple.  It's going to say I
13      consent to allowing this bank to contact me.  Yes
14      or no?
15   A  I can't tell you that.  I don't know.
16   Q  That's all you have to say.  Just say you can't
17      answer.
18   A  I don't know.
19   Q  Okay.  The document speaks for itself.  Thank you.
20             (Plaintiff's Exhibit L was marked for
21      identification.)
22             MR. RODGER:  What are we marking?
23             THE REPORTER:  That last one was K.
24             MR. RODGER:  That's the First Merchants Bank
25      Consumer Disclosure Booklet.
```