UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DEBORAH WALTON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:17-cv-01888-SEB-MPB |
| FIRST MERCHANTS BANK, | ) ) ) |
| Defendant. | ) ) |

**ORDER GRANTING DEFENDANT'S MOTION TO CONFIRM**

On January 24, 2020, following a two-day bench trial conducted by the Honorable Jane Magnus-Stinson,[1] final judgment was entered against Plaintiff Deborah Walton ("Ms. Walton") and in favor of Defendant First Merchants Bank ("FMB") on all claims, including Ms. Walton's allegations that FMB had committed a breach of contract (Count I); that FMB had violated Regulation E of the Electronic Funds Transfer Act, 12 C.F.R. § 205.7 ("Regulation E") (Count II); that FMB had violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") (Count III); and that FMB had violated Indiana's "Autodialer Law," Ind. Code § 24-5-14-1 (Count IV). The Court further found that Ms. Walton had proceeded in bad faith by pursuing her Regulation E claim after her distorted facts allowed her claim to survive summary judgment. Accordingly, Ms. Walton was ordered to reimburse FMB's attorneys' fees in the sum of $57,751.00.

Ms. Walton sought appellate review of the Court's findings related to the Regulation E and TCPA claims as well the award of attorneys' fees. The Seventh Circuit

---

[1] This matter was reassigned to the undersigned judge on September 16, 2020. [Dkt. 320].

1

vacated the judgment with respect to Ms. Walton's TCPA claim but affirmed it all other respects.

Now before the Court is FMB's Motion to Confirm Scope of Claim for Trial. FMB requests an order confirming that the trial Ms. Walton's TCPA claim will be limited in scope to include only the narrow issues expressly remanded by the Seventh Circuit. For the reasons set forth herein, this motion is **granted**.

## Background

### I. Overview of Ms. Walton's Lawsuit

Ms. Walton *pro se* initiated this lawsuit on June 8, 2017, alleging a host of claims arising from her banking relationship with FMB, where she maintained several personal and corporate bank accounts. [*See* Dkt. 1].[2] On August 9, 2017, Ms. Walton filed her amended, operative complaint, in which she alleges violations of the TCPA, Regulation E, and Indiana's Autodialer Law as well as a claim for breach of contract. [Dkt. 15]. With respect to her TCPA claim, which is her surviving claim, Ms. Walton alleges that "[a]t all times mentioned Defendant called Plaintiff's cellular telephone number using an [automatic telephone dialing system ("ATDS")] or predictive dialer, in direct violation according to the Telephone Consumer Protection Act[.]" She further alleges that "[t]he telephone number called by Defendant was assigned to cellular telephone service for which Plaintiff incurs charges[.]" [*Id.* at 4-5].

---

[2] Ms. Walton also banked with Ameriana Bank, where she maintained a personal loan and a business loan. In 2016, when Ameriana and FMB merged, FMB began servicing the loans that Ms. Walton maintained at Ameriana. [Dkt. 188, at 8-9].

2

## II. Judge Magnus-Stinson Denies Ms. Walton's Partial Motions for Summary Judgment and Grants in Part and Denies in Part FMB's Motion for Summary Judgment

While the case was pending before Judge Magnus-Stinson, Ms. Walton filed partial motions for summary judgment, which sought summary judgment on each of her four claims; FMB cross-moved for summary judgment on each of these claims against it. On November 28, 2018, Judge Magnus-Stinson denied Ms. Walton's motions in their entirety; she granted FMB's motion in part and denied it in part. Specifically, Judge Magnus-Stinson granted FMB's motion as it related to Counts I (breach of contract) and IV (Indiana's Autodialer Law). She denied FMB's request for summary judgment on Ms. Walton's TCPA and Regulation E claims. [*See generally* Dkt. 188].

With respect to Ms. Walton's TCPA claim,[3] FMB asserted that it was entitled to summary judgment because, among other reasons, Ms. Walton consented to receiving the calls and because Ms. Walton lacked any evidence that FMB had used an ATDS or an artificial or prerecorded voice to transmit the calls. Ms. Walton countered that she was entitled to summary judgment because she had not consented to the calls and also that FMB had admitted that it has "auto dialed" her. [*Id.*, at 21-23].

Judge Magnus-Stinson denied both parties' motions with respect to the TCPA claim on the grounds that there were disputed material facts surrounding the questions of

---

[3] As Judge Magnus-Stinson explained her summary judgment order, in order for Ms. Walton to prevail, she is required to prove that (1) FMB placed a call to her residential telephone or cell phone; (2) FMB used an ATDS or an artificial or prerecorded voice; and (3) the call was made without her consent. 47 U.S.C. § 227(b)(1)(A)(iii), (b)(1)(B); *Blow v. Bijora, Inc.*, 855 F.3d 793, 798 (7th Cir. 2017);

3

whether Ms. Walton consented to the calls and whether FMB had used an ATDS in transmitting calls to Ms. Walton's telephone. She also determined that there were disputed material facts regarding the number of calls Ms. Walton allegedly had received from FMB. [*Id.* at 22-24].

Though she denied FMB's request for summary judgment on the TCPA claim, Judge Magnus-Stinson nonetheless issued several rulings in her summary judgment order which clarified the scope of this claim and narrowed the remaining factual questions set for trial. In response to FMB's argument that Ms. Walton lacked any evidence that FMB made calls to Ms. Walton's residential landline, Judge Magnus-Stinson determined that the allegations in the Amended Complaint, consistent with Ms. Walton's Statement of Claims, related only to calls made to her cell phone. Judge Magnus-Stinson thus stated unequivocally that "Ms. Walton is foreclosed from asserting a TCPA claim, or making arguments, based on calls to her residential landline going forward in this matter." [Dkt. 188, at 22].

FMB also argued, and Judge Magnus-Stinson agreed, that because several of Ms. Walton's corporate entities maintained accounts with FMB, it was entitled to summary judgment on Ms. Walton's claims to the extent they were brought on behalf of any of those entities instead by Ms. Walton personally. [Dkt. 188, at 12]. To that end, Judge Magnus-Stinson ruled that Ms. Walton's TCPA claim could only proceed as it related to calls made regarding a personal loan originating with Ameriana (the "American Personal Loan"); she could not proceed with a theory under the TCPA relating to calls made regarding any business loans with Ameriana or FMB. [*Id.* at 12-13, 26].

4

Consistent with these rulings, Judge Magnus-Stinson clearly defined the scope of Ms. Walton's surviving claims that would proceed to trial:

> (1) the Regulation E claim (Count II) as it relates to the legality of overdraft charges for the FMB Personal Accounts (i.e., whether Ms. Walton opted into overdraft protection); and (2) the claim for violation of the TCPA (Count III) for calls made to Ms. Walton's cell phone regarding the Ameriana Personal Loan.

[*Id.* at 26].

After an unsuccessful settlement conference two months later in January 2019, a jury trial was scheduled for October 2019.

### III. Judge Magnus-Stinson's Determination That Ms. Walton Waived Her Right to Jury Trial

On July 17, 2019, despite having never challenged Ms. Walton's request for a jury trial in the preceding two years of litigation, FMB moved to strike Ms. Walton's jury demand. [Dkt. 225]. For the first time, FMB invoked a jury-trial-waiver clause contained within its consumer disclosure booklet, which had been distributed to Ms. Walton following FMB's merger with Ameriana. The waiver clause specifically stated that any disputes relating to the services provided by FMB to its clients "shall be decided in the court of Delaware County, Indiana, without a jury." [Dkt. 225, Exh. A, at 8]. Ms. Walton argued that this motion was untimely, insisting that FMB had waived its right to enforce the jury-trial-waiver clause.

Judge Magnus-Stinson held that she had discretion to rule on the belated Motion to Strike and agreed with FMB that Ms. Walton had waived her right to a jury trial. She concluded the FMB's conduct did not reflect an intentional relinquishment of its right to a bench trial. Moreover, as Judge Magnus-Stinson concluded, a bench trial would conserve

5

judicial resources and would not prejudice Ms. Walton. Accordingly, the October jury trial was scheduled for a bench trial. [Dkt. 239].

### IV. Trial Proceedings Before Judge Magnus-Stinson

Judge Magnus-Stinson conducted a two-day bench trial on October 7 and 8, 2019. At trial, evidence presented included testimony from Ms. Walton and Chris Horton, the vice president of FMB's Credit Control Department, who testified about FMB's internal telephone collection policies. Ms. Walton, who had retained counsel assisting her at trial,[4] also proffered Ms. Carmelo Carabello, an AT&T employee, as a witness to testify as to Ms. Walton's telephone records.

A. Ms. Carabello's Testimony

On direct examination, Ms. Walton's counsel questioned Ms. Carabello regarding the lengthy AT&T records that Ms. Walton had relied upon to support her TCPA claim. During this exchange, Ms. Carabello testified that one of Ms. Walton's phone numbers, ending in 7706, was a cell phone number and *not* a residential landline as Ms. Walton had previously indicated. Counsel for FMB swiftly objected to the testimony:

> Your Honor, we are going to object. That is not a cell phone number, and we are going to object on the grounds of relevance. This is Ms. Walton's home phone number, and it has – last time I checked, this case was about calls to her cell phone.

[Tr. Vol. 1, at 66:23-67:2]. Following Ms. Carabello's confirmation that the 7706 number was, in fact, a cell phone number, FMB's objection was overruled. [*Id.* at 67:3-11].

---

[4] Ms. Walton's counsel has since withdrawn from representing her in this litigation.

6

Troubled by Ms. Carabello's testimony that the 7706 number was something other than a residential landline, which contradicted Ms. Walton's representations throughout the two years of litigation, FMB promptly filed a motion to confirm the limits on the scope of trial. [Dkt. 272]. FMB specifically requested confirmation that Ms. Walton's TCPA claim related only to calls to Ms. Walton's cell phone number ending in 9633 regarding the Ameriana Personal Loan. In its motion, FMB identified the many documents and instances of testimony in which Ms. Walton had confirmed that the 7706 number was a home phone number. FMB further explained that it had spent ten months since summary judgment was denied preparing for trial on Ms. Walton's TCPA claim based on calls made to Ms. Walton's cell phone ending in 9633 about the Ameriana personal loan. [*See generally id.*].

On the morning of the second day of trial, after providing Ms. Walton's counsel an opportunity to review FMB's motion and hearing arguments related thereto, Judge Magnus-Stinson granted the motion to confirm, stating:

> When a party asks every question that it can to find out what its exposure is and is given a limited piece of information, they have a right to rely on that. That is all I can conclude. We will be limiting the TCPA claim to the 9633 cell number[.]

[Tr. Trans. Vol. 2, p. 212:14-17].

B. Mr. Horton's Testimony

Mr. Horton was proffered as a witness to testify regarding FMB's collection practices. He explained that FMB uses a core-banking platform called Horizon to transmit collection calls to its customers, which relies on an outside vendor, Ontario Systems, to provide the software needed for these calls. FMB's collection-call records,

7

including Ms. Walton's records in this case, include a column labeled, "USER ID." Within the AT&T records, the USER ID column included several references to the word, "AUTODIALER." This reference in the USER ID column of FMB's records comes from Ontario Systems. [Tr. Vol. 1, at 106:11-107:9; Tr. Exh. 74].

When asked to explain Ontario Systems's use of the term "AUTODIALER" in the USER ID column of the records, Mr. Horton testified that, based on his understanding, the term meant that the call was assisted by Ontario Systems' software, which had both manual and automatic functions. He was unable to determine from these records, however, whether a particular call had been made using the automatic or manual function. Mr. Horton was also unaware whether this software satisfied the statutory definition of an ATDS. [Tr. Vol. 1, at 138:9-15, 163:9-164:9; Tr. Vol. 2, at 215:16-217:15].

Ms. Walton called no witnesses from FMB or Ontario Systems.

C. Judge Magnus-Stinson Entered Final Judgment in Favor of FMB and Against Ms. Walton

On November 25, 2019, Judge Magnus-Stinson entered her post-trial findings of fact and conclusions of law. [Dkt. 286]. With respect to Ms. Walton's TCPA claim, she ruled that Ms. Walton had presented evidence reflecting five calls from FMB's Credit Control Department to her 9633 cell phone number[5] regarding her Ameriana Personal

---

[5] This includes the following calls identified by Judge Magnus-Stinson:
- Call 1: 02/09/17 at 3:46 EST[;]
- Call 2: 02/16/17 at 9:50 EST[;]
- Call 3: 02/16/17 at 4:19 EST[;]
- Call 4: 02/17/17 at 9:32 EST[;] and

8

Loan.[6] However, Ms. Walton had failed to prove that any of these calls had been made using an ATSD. [*Id.* at 9]. Accordingly, Ms. Walton could prevail on her TCPA claim only by showing that the calls were made using a prerecorded or artificial voice. [*Id.* at 9-10]. Ms. Walton had testified that she heard prerecorded or artificial voices on the telephone calls from FMB's Credit Control Department, but Judge Magnus-Stinson refused to credit this testimony, noting that Ms. Walton had "demonstrated a lack of candor and honesty throughout this litigation." [Dkt. 286, at 12-13].

Judge Magnus-Stinson further found that Ms. Walton had pursued her Regulation E claim in bad faith, which had survived summary judgment only because Ms. Walton had provided misleading testimony regarding material facts. Judge Magnus-Stinson awarded FMB its attorneys' fees as sanction for this misconduct. [*Id.* at 19].

Consistent with these findings as well as her summary judgment order, Judge Magnus-Stinson entered final judgment in favor of FMB and against Ms. Walton on January 14, 2020. [Dkt. 306].

---

- Call 5: 02/17/17 at 3:07 EST.

[Dkt. 286, at 6].

[6] Ms. Walton argued in her post-trial briefing "that since FMB's Credit Control Department would sometimes use a single phone call to address issues with multiple accounts, she can recover under the TCPA for 47 calls regarding her [corporate account at FMB] because her 'personal account was typically paid during the grace period.'" [Dkt 286, at 10 (quoting Dkt. No. 279-1 at 16.]. Judge Magnus-Stinson rejected this argument: "To find that calls regarding the [corporate] account also related to the Ameriana Personal Loan would be pure speculation, and Ms. Walton has not sustained her burden of proving that these 47 calls fall within the parameters of her TCPA claim." Accordingly, Judge Magnus-Stinson determined that Ms. Walton TCPA claim was limited to the five telephone calls to her 9633 cell phone number that originated from FMB's Credit Control Department. [Dkt. 286, at 6, 10].

### V. Ms. Walton's Appeal to the Seventh Circuit

Ms. Walton timely appealed Judge Magnus-Stinson's rulings to the Seventh Circuit, contending that she was entitled to a jury trial on her TCPA claim and challenging the award of attorneys' fees relating to her bad faith litigation of the Regulation E claim. She also challenged a discovery sanction imposed against her in the sum of $13,108.00. Finally, she sought reversal of the judgment on the grounds that Judge Magnus-Stinson was biased against her.

The Seventh Circuit agreed that Ms. Walton was entitled to a jury trial on the TCPA claim, holding that "FMB implicitly waived its contractual right a bench trial" when it failed to invoked this right until two years into the litigation and after an adverse summary judgment ruling on the TCPA claim. *Walton v. First Merch.'s Bank*, 820 Fed. Appx. 450, 454, 2020 WL 3791946 (7th Cir.), *reh'g and suggestion for reh'g en banc denied* (July 31, 2020), *cert. denied*, 141 S. Ct. 626 (2020), *reh'g denied*, 141 S. Ct. 949 (2020)

The Seventh Circuit further found that denying Ms. Walton a right to a jury trial was not harmless error. To prove her TCPA claim, as previously stated, Ms. Walton was required to prove that "(1) the bank called her cell phone (2) without her prior express consent (3) using an 'automatic telephone dialing system' or a pre-recorded message to initiate the call." *Id.* at 455. Judge Magnus-Stinson concluded that the first two elements were satisfied, but the proof on the third element failed. The Seventh Circuit, however,

10

held that reasonable jurors could disagree as to whether Ms. Walton had proven this element. It explained:

> Because Ms. Walton failed to introduce any evidence that the bank used an automatic dialing system to place the calls, she could succeed only by showing that she received prerecorded messages from the bank. Her only evidence on that score was her own testimony, which the court refused to credit. That was a reasonable choice given Walton's deceptive behavior throughout the litigation; at the same time, however, a different factfinder might draw a different conclusion. Denying Walton a jury trial is harmless only if the bank would have been entitled to a directed verdict . . . and we cannot say that no reasonable jury could believe Ms. Walton's account of what she heard over the phone.

[*Id.*]. The Seventh Circuit rejected Ms. Walton's remaining arguments, to wit, that Judge Magnus-Stinson was biased and that FMB was not entitled to recover attorneys' fees related to Ms. Walton's instances of misconduct. Accordingly, the Court of Appeals vacated the judgment with respect to Ms. Walton's TCPA claim but affirmed it all other respects. [*Id.* at 455-57].

This case was remanded to our court,[7] and a jury trial on Ms. Walton's TCPA claim is scheduled to commence on July 12, 2021. FMB has filed the pending Motion to Confirm the Scope of Claim for Trial, specifically requesting an order confirming that the only remaining triable issue is whether the five calls from FMB's Credit Control Department to Ms. Walton's cell phone ending in 9633 (that is, those calls identified by

---

[7] Following the receipt of the Seventh Circuit's mandate, Judge Magnus-Stinson granted Ms. Walton's "Motion for a New Judge." Though Judge Magnus-Stinson determined the motion to be "fatally defective," she nonetheless exercised her discretion to recuse. She explained, "The undersigned has made multiple adverse credibility findings during the prior conduct of the proceedings, and the protracted history of this case cautions in favor of minimizing (as opposed to perpetuating) issues that are unrelated to the merits." [Dkt. 319, at 9]. The case was thereafter reassigned to the undersigned judge.

11

Judge Magnus-Stinson in her post-trial findings) regarding the Ameriana Personal Loan were made with an artificial or prerecorded voice.

## Analysis

### I.   Standard of Review

"According to the law of the case doctrine, after an appellate court either expressly or by necessary implication decides an issue, the decision is binding upon all subsequent proceedings in the same case." *Surprise v. Saul*, 968 F.3d 658, 663 (7th Cir. 2020) (citation and quotation omitted). "The law of the case doctrine thus requires a lower court to conform any further proceeding on remand to the principles set forth in the appellate opinion unless there is a compelling reason to depart." *Id.* (citation and quotation omitted). In addition, if the appellate court's decision "identifies a discrete, particular error that can be corrected on remand without the need for redetermination of other issues, the district court is limited to correcting that error." *United States v. Husband*, 312 F.3d 247, 251 (7th Cir. 2002). In such instances where an argument is raised on appeal but not considered by the court of appeals, such "silence on the argument implies that it is not available for consideration on remand" because the court "thought so little of the point that [it] did not see a need to discuss it[.]" *Id.* Finally, "[t]he doctrine of the law of the case creates a presumption against a court's reexamining *its own* rulings in the court of a litigation[,]" except in extraordinary circumstances where a decision was "manifestly erroneous." *Marseilles Hydro Power LLC v. Marseilles Land & Water Co.*, 481 F.3d 1002, 1004 (7th Cir. 2007) (emphasis in original).

Accordingly, in moving forward with a jury trial, we will adhere to the holdings of the Seventh Circuit as well as the rulings of Judge Magnus-Stinson that were not expressly reversed on appeal.

## II.     Discussion

Invoking the law of the case doctrine, FMB contends that Ms. Walton's TCPA claim should proceed to trial on the narrow basis reflected in the Seventh Circuit's opinion, which, as FMB correctly explains, affirmed all of Judge Magnus-Stinson's rulings with the exception of her decision to strike Ms. Walton's request for a jury trial on her TCPA claim, which decision it ruled was not harmless error. Accordingly, says FMB, "this case should proceed to trial (1) on phone calls to Ms. Walton's (single) cell phone ending in 9633, (2) regarding the Ameriana Personal Loan, and that (3) used an artificial or prerecorded voice." [Dkt. 335, at 13]. She should not, therefore, be permitted to present to the jury any theories or evidence related to "(1) any calls to her phone number ending in 7706[;] (2) any calls related to [her] business loans[;] and (3) any calls purportedly made by an ATDS[.]" [Dkt. 337, at 2]. FMB also seeks an order to preclude Ms. Walton from advancing theories or presenting evidence to the jury that Judge Magnus-Stinson previously determined to be "purely speculative," namely, any evidence or theories related to calls beyond the five identified by Judge Magnus-Stinson in her post-trial findings of fact and conclusions of law. We agree with FMB's description of the proper scope of Ms. Walton's TCPA claim and will limit the evidence at trial accordingly.

The parties' sole remaining dispute is whether, based on the law of the case doctrine, Ms. Walton's TCPA claim at trial must be limited to calls made to her cell phone ending in 9633 or whether she may expand this claim to encompass calls to other telephone lines, including her residential landline. FMB argues for such a limitation; Ms. Walton disagrees. We conclude that FMB is correct.

As previously stated, Judge Magnus-Stinson determined in her summary judgment ruling that Ms. Walton's TCPA claim could proceed to trial only with regard to calls made to her personal cell phone, not to her residential landline. Ms. Walton, however, insists that the Seventh Circuit's opinion, properly read, allows her to broaden her TCPA claim, citing the appellate court's reliance on 47 U.S.C. § 227(b)(1)(B), which is the statutory subsection of the TCPA governing calls made to residential landlines. This provision, Ms. Walton argues, "make[s] clear that [she] can use both her Cell and Home phone numbers; to show pre-recorded messages were left on both phones . . . the fact that, the District Judge excluded the home phone calls, is one of the reasons the TCPA judgment was vacated." [Dkt. 336, at 1-2].

Ms. Walton's interpretation of the Seventh Circuit's opinion is incorrect. Though Ms. Walton challenged Judge Magnus-Stinson's decision to limit the TCPA claim to include only calls made to her cell phone ending in 9963, the Seventh Circuit's opinion is silent on this issue. [Case No. 19-3370, at 13].[8] The Seventh Circuit affirmed the trial

---

[8] Ms. Walton specifically challenged on the exclusion of calls to her phone number ending in 7706. To the extent Ms. Walton is now challenging Judge Magnus-Stinson's ruling that the TCPA claim did not encompass calls made to any residential landlines, that argument does not appear to have been raised on appeal and has therefore been waived. *Husband*, 312 F.3d at 251.

14

court judgment against Ms. Walton in *all* respects, with the exception only for Judge Magnus-Stinson's ruling that Ms. Walton had waived her right to a jury trial. The Seventh Circuit's silence as to all other issues renders them "not available for consideration on remand." *Husband*, 312 F.3d at 251. We thus conclude that the Seventh Circuit preserved, rather than reversed, Judge Magnus-Stinson's ruling in this regard.

Though it is true, as Ms. Walton has noted, that the Seventh Circuit cited both the statutory subsection governing calls to cell phones as well as the subsection governing calls to residential landlines, the citation to the latter statute appears to have been an inadvertent inclusion. Given that the Seventh Circuit's analysis of Ms. Walton's TCPA claim has nothing to do with Judge Magnus-Stinson's order excluding the calls made to Ms. Walton's residential landline (indeed, the Seventh Circuit's limited its analysis to whether a reasonable fact finder could conclude that FMB "called her cell phone" without her consent using a pre-recorded message to initiate the call) or to her phone number ending in 7706, we find no basis on which to conclude that the Seventh Circuit intended to permit an expansion of Ms. Walton's TCPA claim at the trial to include calls beyond those made to her cell phone ending in 9633.

Ms. Walton has not challenged FMB's remaining arguments presented in its Motion to Confirm: that her TCPA claim is limited to calls regarding her Ameriana Personal Loan, and that these calls were made using a prerecorded or artificial voice. She also does not specifically dispute that her claim is limited to a consideration of the five

---

To the extent Ms. Walton believes that she did raise this argument on appeal, the Seventh Circuit's silence on the argument reflects its rejection thereof. *Id.*

calls specifically identified by Judge Magnus-Stinson. Accordingly, stated otherwise, the retrial of Ms. Walton's TCPA claim shall exclude any theories, arguments, or evidence related to: FMB's use of an ATDS, calls related to Ms. Walton's business loans, and calls for which she failed to produce any evidence at the first trial (that is, any calls beyond the five identified by Judge Magnus-Stinson). These limitations reflect both Judge Magnus-Stinson's prior rulings and the opinion of the Seventh Circuit.[9]

## CONCLUSION

FMB's Motion to Confirm Scope of Claim for Trial [Dkt. 335] is **granted.** The TCPA claim Ms. Walton will be permitted to present to the jury is whether the five previously identified calls made by FMB's Credit Control Department to Ms. Walton's cell phone ending in 9633 regarding her Ameriana Personal Loan were made with an artificial or prerecorded voice.[10]

---

[9] Ms. Walton accuses FMB of misrepresenting the Seventh Circuit's opinion, though she offers no elaboration as to this contention. We find FMB's motion and accompanying briefing to accurately and thoroughly summarize the Seventh Circuit's opinion as well as the factual and procedural history of this case. It is apparent that Ms. Walton believes she is entitled to retry her TCPA claim with a clean slate; however, as explained herein, that is not accurate. Judge Magnus-Stinson issued several evidentiary rulings in this case that were not vacated by the Seventh Circuit. We shall adhere to these rulings and only revisit the narrow, remanded issue. Finally, Ms. Walton asserts that she is permitted "to testify to the pre-recorded messages she heard." There is no dispute on this point; FMB agrees that the Seventh Circuit's analysis holds as much, and that is how we interpret that opinion as well.

[10] We note that Ms. Walton's Amended Complaint asserts that she is seeking to recover her actual, statutory, and treble damages for the alleged TCPA violations. The TCPA provides that a successful plaintiff may recover her "actual monetary loss" or "receive up to $500 in damages for each [] violation, whichever is greater[.]" 47 U.S.C. § 227(a)(2)(F)(3). If the jury finds for Ms. Walton on the merits of her TCPA claim, the jury will also determine whether and to what extent she has suffered actual damages; however, she is not entitled recover both actual *and* statutory damages. *Reliable Money Order, Inc. v. Mcknight Sales Co.*, Inc., 2013 WL 12180512, at *4 (E.D. Wis. Sept. 11, 2013). Rather, she will recover the greater of the two sums, as stated in the statute. Alternatively, if she chooses to forgo her pursuit of actual damages, there is no need to

IT IS SO ORDERED.

Date: 5/27/2021

*SARAH EVANS BARKER, JUDGE*
United States District Court
Southern District of Indiana

Distribution:

DEBORAH WALTON
P.O. Box 598
Westfield, IN 46074

Richard A. Cook
YOSHA COOK & TISCH
rcook@yoshalaw.com

John F. McCauley
DENTONS BINGHAM GREENEBAUM LLP (Indianapolis)
john.mccauley@dentons.com

Jessica Laurin Meek
DENTONS BINGHAM GREENEBAUM LLP (Indianapolis)
jessica.meek@dentons.com

Andrew M. Pendexter
DENTONS BINGHAM GREENEBAUM LLP (Indianapolis)
andrew.pendexter@dentons.com

Alex S Rodger
BINGHAM GREENEBAUM DOLL LLP
asrodger@strausstroy.com

David O. Tittle
DENTONS BINGHAM GREENEBAUM LLP (Indianapolis)
david.tittle@dentons.com

---

submit the question of damages to the jury given that the court "will simply multiply the number of TCPA violations found by the jury by $500 to arrive at the amount of statutory damages." *Id.* The court may, in its discretion, award treble damages if it finds that FMB acted willfully or knowingly in violating the TCPA. 47 U.S.C. § 227(a)(2)(F)(3).